STATE v. P. C. McINTIRE.

*Indictment for Libel—Publication.*

Where one in this State wrote a libellous letter and procured another in this State to copy, read and mail it to the prosecutor in another State: *Held*, that it was a publication in this State of the libellous letter.

Indictment for libel, tried before *Jones, J.*, at May Term, 1894, of Buncombe Criminal Court.

The defendant introduced no testimony, and the only evidence offered by the State was a letter written by defendant, as follows:

"Asheville, N. C., January 11, 1894.

"*Armour Packing Company, Kansas City, Mo.*

"Gentlemen: I write you a few lines to let you know what kind of a firm you are dealing with here in Asheville, N. C. The firm of W. M. Hill & Co. is who I allude to, the company which was connected with W. M. Hill, who was Smith Bros. in Tennessee, has sold out to a man from Pennsylvania, Ohio. He paid one thousand dollars for one-half interest of the business—eight hundred cash and the balance in notes; this is my information in the matter, but this is not all I want to say to you. W. M. Hill is a Negro, and he went to Chicago, Ill., and married a white Irish woman, and the laws of North Carolina does not recognize a white woman and a colored man living together, and so they are living (over) in adultery, and he will be prosecuted for living with a white woman in the next term of the Criminal Court, in which the penalty is from five to ten years in the Penitentiary if he stays here and stands a trial. So I put you on your guard; if you sell him meats on credit, and he has to leave here, you will lose all, as he has no property and his

115—49

last partner is a poor man.  My partner has bought a few days ago a half interest in W. M. Hill's business, and Hill told him he did not intend to stay here no longer than one year, as he was born unfortunately and would have to leave this country, and he intended to beat you out of all he could, and also beat Smith Bros., his former partners, out of a carload of hogs, and catch all the farmers about here he could, and take the money and leave here.  So, when Hill told my partner, Sherman, this, he, Sherman, would not go in with him, for he is a man with money and he would have all the bills to pay.          Yours truly,

(Signed)      " P. C. McINTIRE."

The defendant admitted that he wrote the letter.

The State then introduced Richard Knebler, who testified that defendant " told me to mail the letter.  I addressed it to the Armour Packing Company, Kansas City, Mo., and mailed it here at the postoffice.  I read the letter over to him after I wrote it for him to see if it was all right.  I copied it from a letter he had written.  I identify this as the original letter he wrote for me to copy, and I made an exact copy of it.  I signed his name to it; he told me to do it."

*Cross-examined.*—"I sealed it and put it in the postoffice."

J. A. Horne testified as follows: " I am local manager here for the Armour Packing Company.  I know S. S. Jerome; he is their Southern manager, and has charge of all their business houses in the South.  (Letter shown him.)  I have seen this letter before.  I saw it in the hands of Mr. Jerome at my office in Asheville.  Letter dated January 11, 1894.  It was about two weeks after January 11 that I saw the letter.  I read it.  I saw him read it afterwards at the Battery Park Bank in Asheville to Mr. J. E. Rankin.  The Armour Packing Company deals in fresh provisions and cold meats; we deal in fresh meats with W. M. Hill & Co., and no one else."

J. E. Rankin testified as follows: " I know S. S. Jerome,

Southern manager of the Armour Packing Company. (Letter shown him.) I have seen this letter before; Jerome showed it to me at Battery Park Bank here about February 1. He read it to me." (The letter offered in evidence, marked " Exhibit A," read to jury.)

Defendant says that the statements in the letter were false, and that it was libellous.

At the close of the evidence for the State, defendant stated that the only ground upon which he resisted a verdict of guilty, was that there was no evidence, or not sufficient evidence, of publication in this State to justify a verdict of guilty, and asked the Court, in writing, to give the following instruction to the jury:

" The defendant asks the Court to charge the jury that, taking the evidence of the State as true, there is no evidence, or not sufficient evidence, of a publication by the defendant of the libellous matter alleged in this State to justify a verdict of guilty."

The Court declined to give the instructions prayed for. Exception by defendant.

The Court then charged the jury that, if they believed the evidence for the State, there was a publication; and the defendant having admitted all the other ingredients of libel, they should return a verdict of guilty. Exception by the defendant.

The jury returned a verdict of guilty. Motion for a new trial was refused, and defendant appealed.

*The Attorney General,* for the State.
*Mr. H. C. Carter,* for defendant (appellant).

SHEPHERD, C. J.: The only question before this Court is, whether there was any evidence of the publication of the libellous letter in this State. Richard Knebler testified, on behalf of the State, as follows:

" The defendant told me to mail the letter. I addressed it to the Armour Packing Company, Kansas City, Mo., and mailed it here at the postoffice. I read the letter over to him after I wrote it for him to see if it was all right. I copied it from a letter he had written. * * * I sealed it and put it in the postoffice."

It appears that the letter reached the company to which it was addressed, and was afterwards brought to Asheville and read there by several persons. These last-mentioned facts, however, do not seem to be necessary to be considered, as it is settled by reason, as well as authority, that according to Knebler's testimony, the letter was published in this State.

" Publication in the law of libel is the communication of the defamatory matter to some third person or persons." Odgers on Libel and S., 150. In this case the contents of the letter were communicated to Knebler, a third person, and that this was a sufficient publication is apparent from the authorities. Odgers, *supra*, 151; Newal on Defamation and Slander, 229.

In *Delacrox* v. *Thevenot*, 2 Stark, 63, the defendant knew that the plaintiff's letters were always opened by his clerk in the morning, and yet sent a libellous letter addressed to the plaintiff, which was opened by the plaintiff's clerk and lawfully read in the usual course of business. It was held a publication by the defendant to the plaintiff's clerk.

In *Snyder* v. *Andrews*, 6 Barbour, 43, the defendant wrote a letter to the plaintiff himself, but read it to a friend before posting it. It was held a publication. See also *McCombs* v. *Tuttle*, 5 Black. (Ind.), 431.

In *Keene* v. *Ruff*, 1 Clarke (Iowa), 482, the defendant, before posting the letter to the plaintiff, had copied it. It was held a publication by the defendant to his own clerk who copied it.

We think these authorities are decisive of the case.

Affirmed.