C. T. GILLIKIN, ADMINISTRATOR OF LOUIE ELMER GILLIKIN, DECEASED, AND NEXT OF KIN TO LOUIE ELMER GILLIKIN, DECEASED v. GENE BELL.

(Filed 8 March, 1961.)

**1. Dead Bodies § 3—**
    An action for a wrongful act done to a body is governed by the three-year statute of limitations, G.S. 1-52 (5).

**2. Limitation of Actions § 18—**
    When it appears from plaintiff's pleading that the cause alleged is barred by the applicable statute of limitations, the court may properly dismiss the action.

**3. Common Law—**
    The common law, except as modified by statute, is in force in this State. G.S. 4-1.

**4. Same: Libel and Slander § 1—**
    The publication of defamatory pictures of the body of a dead person with the malevolent purpose of injuring his family is a misdemeanor at common law, but the common law recognized no right of civil action for damages for defamation of a dead person, and, since no such right of action is given by statute, it does not exist in this State.

APPEAL by plaintiff from *Burgwyn, E. J.,* October 1960 Term, of CARTERET.

This suit is a companion to the case of *Gillikin v. Springle, ante,* 240, which is referred to for a general statement of the facts relating to a conspiracy to defeat plaintiff's right of action for the wrongful death of his son. Defendant's participation in the alleged conspiracy is amplified in the complaint filed in this action. We summarize the allegations particularly directed at defendant: He is a commercial photographer. He aided Springle in taking "scurrilous and defamatory pictures which tended to reflect upon and desecrate the body of the said Louie Elmer Gillikin." ". . .(W)ith the aid and assistance of Patrolman J. W. Sykes, he pulled the body of the deceased out of the car and directed a picture taken of the body covered with blood and made pictures exposing his private parts and further directed a picture taken of the body as it lay on the stretcher and at no time exhibited any respect for the deceased nor did he cover the body." Springle, aided and abetted by defendant, "caused many copies to be made of these photographs and distributed and exhibited them throughout Carteret County with the wicked and evil intent of casting aspersions and indignities upon the deceased. . ." Bell "knew that it was wrong for him to aid and assist in distributing such photographs for the sole purpose of aiding the said Leslie D. Springle in his efforts to win in a law suit. . . . through the wrongful acts of the said Gene Bell the said Bell aided and abetted the said Leslie D. Springle in thwarting justice and in defeating the rightful claim of the administrator in the original suit." He prays for $15,000 compensatory and $5,000 punitive damages."

Defendant denied all allegations charging him with wrongdoing. As additional defenses he pleaded the one-and three-year statutes of limitations. Defendant's motion for judgment on the pleadings was allowed. Plaintiff excepted and appealed.

*Charles L. Abernethy, Jr., for plaintiff, appellant.*
*C. R. Wheatly, Jr. and Thomas S. Bennett for defendant, appellee.*

RODMAN, J. If, as alleged, defendant with the intent to prevent plaintiff from recovering damages for the wrongful death of his intestate, took pictures falsely depicting conditions at the wreck and knowingly used or permitted the use of such pictures in the trial of plaintiff's action, he would be guilty of perjury or subornation of perjury. This conduct would support criminal prosecution but would not create civil liability. *Gillikin v. Springle, ante* 240.

We do not understand from our reading of the complaint that

plaintiff intends to allege a wrongful act done to the body, but if he does intend to assert some such right of action, it is barred by the statute of limitations, G.S. 1-52(5). The collision occurred 2 July 1956. This action was begun 20 August 1959. Since the bar appears from the pleadings, the court could properly dismiss the action. *Nowell v. Hamilton,* 249 N.C. 523, 107 S.E. 2d 112.

But plaintiff does not limit his right to recover to these allegations. He also seeks to recover because of "scurrilous and defamatory pictures which tended to reflect upon" deceased, which pictures were "distributed and exhibited. . . throughout Carteret County with the wicked and evil intent of casting aspersions and indignities upon the deceased."

Chancellor Kent defined libel as a malicious publication tending to blacken the memory of one dead or the reputation of one alive. This definition of a libel has been referred to with approval by this Court in several cases. *Simmons v. Morse,* 51 N.C. 6; *Davis v. Retail Stores, Inc.,* 211 N.C. 551, 191 S.E. 33; *Flake v. News Co.,* 212 N.C. 780, 195 S.E. 55. It is the definition most frequently used in defining libel. 33 Am. Jur. 38; 53 C.J.S. 32.

Since a libel is apt to create a breach of the peace, it is a common law crime. 33 Am. Jur. 291, 53 C.J.S. 409; *Kennerly v. Hennessy,* 19 A.L.R. 1468, with annotations. It has been recognized as such by us. *S. v. Powers,* 34 N.C. 5; *S. v. Townsend,* 86 N.C. 676; *S. v. Lyon,* 89 N.C. 568; *S. v. McIntire,* 115 N.C. 769. The common law, except as modified by statute, is in force in this State. G.S. 4-1; *S. v. Hampton,* 210 N.C. 283, 186 S.E. 251. The Legislature has enlarged the class of things which are criminal because defamatory. G.S. 14-47, 48.

"It is a misdemeanor at common law, punishable on indictment with fine and imprisonment, to write and publish defamatory matter of any person deceased, provided it be published with the malevolent purpose to injure his family and posterity, and to expose them to contempt and disgrace; for the chief reason of punishing offenses of this nature is their tendency to a breach of the peace. And although the party be dead at the time of publishing the libel, yet it stirs up others of the same family, blood or society to revenge and to break the peace." Newell, Slander and Libel, 4th ed., p. 931.

Not all criminal acts gave a right of action for damages at common law. The wrongful killing of a human being, even though criminal, gave no right of action until the enactment of Lord Campbell's Act. G.S. 28-173. We have never been called upon to determine whether a right of action existed for damages for the defamation of a dead person, but since, as noted, the common law applies in North Carolina except as amended by statute, we turn to common law to ascertain

if it afforded such a right of action. The cases are practically unanimous in holding that no such right existed. *Renfro Drug Co. v. Lawson,* 160 S.W. 2d 246, 146 A.L.R. 732, with annotations, 739; *Rose v. Daily Mirror,* 31 N.E. 2d 182, 132 A.L.R. 888; *Kelly v. Johnson Publishing Company* (Calif.), 325 P 2d 659; *Hughes v. New England Newspaper Publishing Co.,* 43 N.E. 2d 657; 33 Am. Jur. 42; 53 C.J.S. 53.

The Legislature has the power to modify the common law and permit an action for damages for defamation of a dead person, designating the person who may sue and how the sums recovered shall be distributed. Until the Legislature authorizes such actions, we feel impelled to adhere to the common law denying a right of action. Manifestly the Legislature has not been inadvertent to the law of libel. Illustrative of the attention which it has given to the subject, see c. 99 of the General Statutes, G.S. 28-175, G.S. 14-47, 48, and 401.3.

Plaintiff makes no attempt to allege an invasion of his right of privacy. *Bremmer v. Journal-Tribune Publishing Company,* 76 N.W. 2d 762; *Kelly v. Post Publishing Co.,* 98 N.E. 2d 286.

Since plaintiff has not alleged a cause of action not barred by the statute of limitations, the court properly dismissed the action.

Affirmed.