JOE HENRY, ADMINISTRATOR OF THE ESTATE OF ARCHIE LEE HENRY v. FLOYD DEEN, JR., M.D., FLOYD DEEN, JR., M.D., P.A., ANN HALL AND ABDUL-HAKIM NIAZI-SAI, M.D.

No. 8220SC266

(Filed 15 March 1983)

1. **Rules of Civil Procedure § 15.1— refusal to grant amendment to complaint error**

   Where there was no evidence of undue delay, undue prejudice to the defendant, or bad faith on the plaintiff's part, the trial court erred in not allowing plaintiff to amend his complaint pursuant to G.S. 1A-1, Rule 15(a).

2. **Physicians, Surgeons, and Allied Professions § 16.1— allegations of complaint sufficient to raise claim of medical malpractice**

   In a civil action involving claims for wrongful death and civil conspiracy, the trial court erred in dismissing plaintiff's complaint as it related to the culpability of one of the doctors for medical malpractice since plaintiff's amended complaint contained allegations that the physician attempted to diagnose and treat the patient by telephone and failed to examine the radiologist's report and X-rays of the patient. These allegations raised a claim

Henry v. Deen

of medical malpractice, and the original pleading gave sufficient notice of the physician's involvement in the treatment of the patient to trigger the relation back provision of G.S. 1A-1, Rule 15(c).

**3. Damages § 12.1— pleadings for punitive damages insufficient**

In a civil action involving claims for wrongful death and civil conspiracy against two physicians and a physician's assistant, the trial court did not err in dismissing plaintiff's claim for punitive damages against defendants since plaintiff alleged gross negligence and willful and wanton conduct on the part of the defendant but failed to make allegations of any fact showing any aggravating circumstances which would give rise to punitive damages.

**4. Conspiracy § 2.1— civil conspiracy—insufficient evidence**

The basis for an action for civil conspiracy is not the agreement to conspire, but the damage suffered by the plaintiff; therefore, where the plaintiff showed no damage, the trial court's order dismissing all claims of civil conspiracy as against any of the defendants was proper.

Judge EAGLES concurring in part and dissenting in part.

APPEAL by plaintiff from *Kivett, Judge.* Order entered 14 December 1981 in Superior Court, ANSON County. Heard in the Court of Appeals 20 January 1983.

This is a civil action involving claims for wrongful death and civil conspiracy against two physicians and a physician's assistant. Plaintiff, as administrator of the estate of Archie Lee Henry, originated this action on 25 June 1981 by filing a complaint seeking monetary damages for the wrongful death of Henry as the proximate result of negligent conduct of defendants Deen, Hall and Niazi.

In his complaint, the plaintiff alleged the following: The decedent, complaining of severe chest pains went to the emergency room of the Anson County Hospital on 1 July 1979. The emergency room physician diagnosed the decedent's condition as pneumonia, took chest X-rays, prescribed medication and discharged Henry. Later that day the hospital radiologist reviewed the X-rays and indicated Henry's medical condition involved possible cardiac deterioration. The emergency room physician called Henry late in the evening on 1 July 1979 and instructed him to go to Dr. Floyd Deen's office for more complete medical evaluation.

On 3 July 1979 Henry went to Deen's office where he was seen by Dr. Deen and Ann Hall, Deen's physician's assistant.

After examining Henry, Deen and Hall advised him to continue taking the medicine prescribed by the emergency room physician and to return for a follow-up visit on 6 July 1979. Henry returned to Deen's office on 6 July 1979. His medical condition was unchanged. Dr. Deen was not in his office on 6 July 1979 and Henry was seen by Ann Hall. The plaintiff also alleges that Hall performed no diagnostic tests during the visit on 6 July 1979, but told Henry to continue taking his medication. On 8 July 1979 Henry died of a massive myocardial infarction.

After Henry's death, the plaintiff and Henry's family began investigating the nature of the medical treatment given to Henry. Plaintiff alleges that when defendants Deen and Hall learned of the investigation they conspired to create false and misleading entries in decedent's medical records. The complaint specifically states Deen, Hall and the defendant Dr. Niazi further conspired to falsify medical records detailing a nonexistent consultation between Dr. Niazi and Hall on 6 July 1979.

Plaintiff's complaint sets forth six counts against the defendants which can be summarized as follows: (1) Henry's death was proximately caused by defendant Deen's negligence in failing to provide proper medical care; (2) Henry's death was proximately caused by defendant Hall's negligent failure to provide adequate medical care; (3) Hall's negligence was imputed to Dr. Deen's professional association under the doctrine of *respondeat superior*; (4) the gross, wanton, intentional and reckless conduct of Deen and Hall entitled the plaintiff to recover punitive damages; (5) the conspiracy between Deen and Hall to falsify medical records constituted a civil conspiracy giving rise to punitive damages; (6) the conspiracy between Deen, Hall and Niazi to create a record of a nonexistent consultation constituted a civil conspiracy giving rise to punitive damages. Also, in paragraph No. 6 of the complaint, the plaintiff states that this action was for "the wrongful death of Henry as the proximate result of certain negligent and willful, wanton conduct on the part of Deen, Hall and Niazi, acting jointly and severally."

On 30 November 1981 the plaintiff filed a motion for leave to amend his complaint. Plaintiff's amended complaint was substantially similar to the original complaint except that it added more detailed factual allegations of Dr. Niazi's conduct. The amended

complaint pleaded alternatively that, pursuant to an arrangement between Niazi and Deen by which Niazi treated Deen's patients in Deen's absence, Hall did call Niazi concerning Henry's medical condition on 6 July 1979 and that Niazi was negligent in failing to give the decedent proper medical attention.

On 14 December 1981 Judge Kivett denied plaintiff's motion to amend the complaint, dismissed the complaint as to defendant Niazi and dismissed the claim for civil conspiracy and punitive damages as to Deen and Hall.

Plaintiff appealed.

*James, McElroy & Diehl, by Gary S. Hemric for plaintiff-appellant.*

*Charles V. Tompkins, Jr. and Fred B. Clayton for defendant-appellees Floyd Deen, Jr., M.D., and Floyd Deen, Jr., M.D., P.A.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding for defendant-appellee Abdul-Hakim Niazi-Sai, M.D.*

*No counsel for defendant-appellee Ann Hall.*

HEDRICK, Judge.

The plaintiff contends the trial court erred in (1) denying his motion to amend the complaint, (2) dismissing the complaint as it related to defendant Niazi, (3) dismissing the claim of civil conspiracy against defendants Deen and Hall and (4) granting defendants' motion to dismiss and strike from the complaint those paragraphs relating to punitive damages.

[1] We first consider plaintiff's argument that his motion to amend the complaint on 30 November 1981 was improperly denied. Rule 15(a) of the North Carolina Rules of Civil Procedure sets out the conditions for amending pleadings. It states in pertinent part: "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In interpreting Fed. R. Civ. P. 15(a), which was the model for the North Carolina rule, the United States Supreme Court wrote in *Foman v. Davis*, 371 U.S. 178, 182 (1962):

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

A recent opinion by this court, *Ledford v. Ledford*, 49 N.C. App. 226, 233-234, 271 S.E. 2d 393, 398-399 (1980), cited the above language from the *Foman v. Davis* case and held:

In the case *sub judice* the trial court did not set out a justifying reason for denying plaintiff's motion to amend and no such reason appears in the record on appeal. The United States Supreme Court has held that the trial judge abuses his discretion when he refuses to allow an amendment unless a justifying reason is shown. *Foman v. Davis, supra.* Nor does the record reveal any attempt on the part of the defendant to show that he would be prejudiced by the amendment. The burden is on the objecting party to show that he would be prejudiced thereby. *Vernon v. Crist*, 291 N.C. 646, 231 S.E. 2d 591 (1977) (dictum); *Public Relations, Inc. v. Enterprises, Inc.*, 36 N.C. App. 673, 245 S.E. 2d 782 (1978). It must be concluded that the ruling of the trial court in denying the motion to amend is based on a misapprehension of the law, that the circumstances . . . were sufficient as a matter of law to warrant summary judgment for defendant rendering the amendment futile. We conclude that the denial of the motion to amend without a justifying reason and no showing of prejudice to defendant, and apparently based on a misapprehension of the law, was an abuse of discretion and reversible error.

Likewise, in the case before us, the Court below set forth no reason or explanation for denying plaintiff's motion nor can we find any reason from our review of the record. There is no evidence of undue delay, undue prejudice to the defendants, or bad faith on the plaintiff's part. Absent such a showing, amendments should be granted liberally. Therefore, we hold the trial

court erred in not allowing plaintiff's amendment to the complaint.

[2]   We next consider plaintiff's argument that the trial court erred in dismissing the complaint as it related to the culpability of Dr. Niazi for medical malpractice. The original complaint stated that the action was for the wrongful death of Henry as the proximate result of negligent conduct by Deen, Hall and Niazi, but the original complaint gave no further details of Niazi's alleged negligence. The amended complaint gives sufficient details relating to Niazi's involvement in the medical diagnosis and treatment of Henry to make out a claim for medical malpractice against Niazi.

North Carolina Rule of Civil Procedure 15(c) states:

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

Because of the relation back of amended complaints to the date of the original complaint, the plaintiff's complaint should not have been dismissed. The amended complaint contains allegations that Niazi attempted to diagnose and treat Henry by telephone and failed to examine the radiologist's report and X-rays of Henry. These allegations raise a claim of medical malpractice, and the original pleading gave sufficient notice of Niazi's involvement in the treatment of Henry to trigger the relation back provision of Rule 15. We hold the trial court erred in dismissing the complaint insofar as it relates to Niazi's potential liability for medical malpractice.

[3]   Plaintiff also complains that the trial court erred in dismissing his claim for punitive damages against defendants Deen, Hall and Niazi for negligent medical treatment of Henry. In order to sustain a claim at the pleading stage the complaint must set forth

[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences,

intended to be proved showing that the pleader is entitled to relief. . . .

N.C. R. Civ. P. 8(a)(1). In *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970), our Supreme Court discussed the application of Rule 8(a)(1):

> Under the 'notice theory' of pleading contemplated by Rule 8(a)(1), detailed fact-pleading is no longer required. A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial discovery—to get any additional information he may need to prepare for trial.

277 N.C. at 104, 176 S.E. 2d at 167.

Any recovery for punitive damages must be based on aggravated, intentional, wanton or grossly negligent conduct, *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976), and the pleading must allege sufficient facts to place a defendant on notice of the aggravating factors which would justify the awarding of punitive damages. *Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981). Here, the plaintiff alleged in his complaint that Henry's death was the proximate result of the gross negligence and willful and wanton conduct of the defendants Deen, Hall and Niazi. The complaint sufficiently notified the defendants of the occurrence of Henry's death to make them cognizant of the claim for medical malpractice; however, there are no allegations of any facts showing any aggravating circumstances which would give rise to punitive damages. All the pleader has done in this regard has been to make conclusory allegations as to willful, wanton conduct and gross negligence. We point out that ordinarily medical malpractice does not have a built-in aggravating factor such as is present in claims for damages arising out of criminal conduct such as fraud, assault or murder. We hold the trial judge did not err in dismissing plaintiff's claim for punitive damages.

[4] Finally, we consider plaintiff's contention that the trial judge erred in dismissing his claim for civil conspiracy against all the defendants. Plaintiff argues he was damaged by the defendants conspiring to falsify evidence and to impede his investigation.

Plaintiff contends he should be allowed to assert such a claim concurrent with his action for medical malpractice. We disagree.

As a general rule, a civil action may not be maintained for damages "for false testimony, or for subornation of false testimony, or for conspiracy to give or to procure false testimony." 16 Am. Jur. 2d, *Conspiracy* § 63 (1979). The basis for an action for civil conspiracy is not the agreement to conspire, but the damage suffered by the plaintiff. 16 Am. Jur. 2d, *Conspiracy* § 52 (1979); 3 N.C. Index 3d, *Conspiracy* § 1 (1976). Therefore, some damage to the plaintiff must predicate an action to recover for civil conspiracy.

Our Supreme Court has addressed this issue in *Gillikin v. Bell*, 254 N.C. 244, 118 S.E. 2d 609 (1961) and *Gillikin v. Springle*, 254 N.C. 240, 118 S.E. 2d 611 (1961). In *Gillikin v. Bell*, the plaintiff sued a commercial photographer for aiding a defendant in a wrongful death action by removing the body of the deceased from a wreck and photographing it in positions damaging to plaintiff's case. In the companion case, *Gillikin v. Springle*, the driver of the wrecked car was charged with a conspiracy to suborn perjured testimony. In each case the court denied relief and stated the general rule that a civil action in tort will not lie for perjury or subornation of perjury.

Furthermore, in the case before us the plaintiff has shown no damage. He alleges he has spent $3,000 in investigating and collecting evidence of Henry's alleged wrongful death, but those are expenses naturally incurred in the bringing of any lawsuit. Plaintiff's problems in gathering proof because of the alleged conspiracy by the defendants in no way make his case unique. He can hardly allege any damage when his right to recover on the tort claim has yet to be adjudicated. We affirm the portion of the trial court's order dismissing all claims of civil conspiracy as against any of the defendants.

The result is: the trial court erred in not allowing plaintiff's motion to amend the complaint; the order dismissing plaintiff's claim for punitive damages and civil conspiracy as to all defendants will be affirmed; the order dismissing plaintiff's claim against Dr. Niazi for medical malpractice is reversed; and the cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

Affirmed in part; reversed and remanded in part.

Judge JOHNSON concurs.

Judge EAGLES concurs in part and dissents in part.

Judge EAGLES concurring in part, dissenting in part.

I respectfully dissent from that portion of the majority opinion which affirms dismissal of the civil conspiracy claim for relief. That claim was based upon alleged fraudulent falsification of medical records by two licensed physicians and a physician's assistant in preparation for trial. To decide as the majority does is to grant a license to persons facing serious civil actions to commit fraud with impunity in preparation for litigation.

The majority relies on two of the *Gillikin* series of cases: *Gillikin v. Bell,* 254 N.C. 244, 118 S.E. 2d 609 (1961) and *Gillikin v. Springle,* 254 N.C. 240, 118 S.E. 2d 611 (1961).

The *Gillikin* cases can be distinguished from the case *sub judice* as follows:

(1) The *Gillikin* cases involved separate lawsuits brought after termination of the initial action thereby invoking the public policy disfavoring endless litigation. Here, the original action is pending and the civil conspiracy is sought by plaintiff to be joined to the initial action, permitting the entire allegations to be resolved at one trial.

The *Gillikin* cases were actions against the alleged original tort-feasor (*Gillikin v. Springle, supra*), a photographer (*Gillikin v. Bell, supra*), an indemnity bond company (*Gillikin v. United States Fidelity & Guaranty Company,* 254 N.C. 247, 118 S.E. 2d 606 (1961)) and an auto liability insurance company (*Gillikin v. Ohio Farmers Indemnity Company,* 254 N.C. 250, 118 S.E. 2d 605 (1961)) for interference with a previously terminated civil action which plaintiff Gillikin had lost to Springle. The practical effect of the outcome in the *Gillikin* cases is to require that all possible claims be put to rest at one time with plaintiff limited to "one day in court." That goal would be achieved here by reversing the dismissal and permitting this claim to be tried at the same time as the related causes.

This action for civil conspiracy involves only those parties who were already party defendants in this pending action and does not involve others as parties.

(2) There is admittedly no civil action for perjury or subornation of perjury since they are punishable as crimes but here the misconduct was the wrongful falsification of medical records with the intent to cover up medical malpractice and thereby defraud the decedent's estate. Had the fraudulent misrepresentation gone undiscovered, if in fact it occurred as was alleged, and the defendants had testified at trial pursuant to their alleged design, then the crime of perjury, a violation of G.S. 14-9, might have resulted. Falsification of medical records with the intent to misrepresent to plaintiffs and to the court the treatment and diagnosis of decedent and thereby defraud a decedent's estate of damages in an action for medical malpractice and a civil conspiracy to accomplish this wrong are actionable.

> To create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object. The gravamen of the action is the resultant wrong, and not the conspiracy itself. Ordinarily the conspiracy is important only because of its bearing upon rules of evidence, or the persons liable. 11 Am. Jur., Conspiracy, section 45.

*Holt v. Holt,* 232 N.C. 497, 500, 61 S.E. 2d 448, 451 (1950).

"In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts." *Shope v. Boyer,* 268 N.C. 401, 405, 150 S.E. 2d 771, 773 (1966). Here the wrongful overt act is the falsification or alteration of medical records pertaining to plaintiff's decedent with the intent to misrepresent the true facts and thereby defraud plaintiff in their efforts to recover for alleged medical malpractice.

In *Reid v. Holden,* 242 N.C. 408, 414-15, 88 S.E. 2d 125, 130 (1955), Bobbitt, J. (later Chief Judge), succinctly stated the law of civil conspiracy:

> "Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the

conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof —the damage—not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable." 11 Am. Jur. 577, Conspiracy sec. 45. To create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective. 15 C.J.S. 1000, Conspiracy sec. 5. These principles have been recognized and applied by this Court.

Since the alleged wrongful acts were discovered, the full potential for harm and damages was not realized. Because of plaintiff's alleged discovery that the records contained intentional misrepresentations and had been falsified, plaintiff's damages are the *additional* costs of investigation and ultimate detection of the attempted fraud on the decedent's estate. According to the complaint, they are alleged to amount to approximately $3,000.00.

Suffice it to say, there are allegations of a conspiracy, a wrongful overt act in furtherance of that conspiracy and damages to plaintiff which, if proven, are sufficient to justify recovery.

Conspiracy among professionals to defraud a decedent's estate and ultimately a trial court as alleged, is outrageous, offensive, and egregious conduct. In a system of jurisprudence in which the courts are relied on as an orderly means of settling disputes and differences, it is incongruous to permit misrepresentations, fraud and deception such as is alleged here to occur with impunity.

For these reasons, I respectfully dissent from the majority's decision to dismiss the claim for civil conspiracy. In all other respects, I concur with the majority.