JOE HENRY, ADMINISTRATOR OF THE ESTATE OF ARCHIE LEE HENRY v. FLOYD DEEN, JR., M.D., FLOYD DEEN, JR., M.D., P.A., ANN HALL AND ABDUL-HAKIM NIAZI-SAI, M.D.

No. 200A83

(Filed 10 January 1984)

1. **Rules of Civil Procedure § 15.1— refusal to grant amendment to complaint—no abuse of discretion**

The trial court did not abuse its discretion in denying a plaintiff's motion to amend his original complaint to allege a claim for wrongful death against defendant Niazi since plaintiff's original complaint failed to give notice of the transactions or occurrences to be proved to support a claim for relief for wrongful death against Niazi, and plaintiff specifically made allegations which would negate the possibility of any actionable negligence by Niazi. Since the original complaint did not give notice of a claim against Niazi for negligence or of the transactions or occurrences to be proved in support of any such claim, Rule 15(c) of the North Carolina Rules of Civil Procedure prevented the relation back of this amendment to the time the original complaint was filed in that plaintiff filed his attempted amendment more than two years after his cause of action accrued and past the statute of limitations for negligent wrongful death actions pursuant to G.S. 1-53.

**2. Damages § 12.1— pleadings for punitive damages sufficient**

In a civil action involving claims for wrongful death and civil conspiracy against two physicians and a physician's assistant, the trial court erred in dismissing plaintiff's claim for punitive damages against one of the physicians and the physician's assistant since, pursuant to G.S. 1A-1, Rule 8(a)(1), a statement of a claim is adequate if it gives sufficient notice of events or transactions to allow the adverse party to understand the nature and basis for the claim, to allow him to prepare for trial, and to allow for the application of *res judicata*, and since plaintiff's complaint met the requirements of this rule.

**3. Conspiracy § 2.1— civil conspiracy—sufficiency of evidence**

In a civil action involving claims for wrongful death and civil conspiracy against two physicians and a physician's assistant, if the trial court on remand allows the plaintiff's motion to amend his complaint to allege injury from the conspiracy, the trial court erred in granting defendants' motions to dismiss the claim for civil conspiracy pursuant to Rule 12(b)(6) where plaintiff alleged that all three of the defendants conspired to impede his investigation of this case by destroying decedent's medical records and by falsifying and fabricating records to cover up the defendants' alleged negligence. Where, as alleged here, a party deliberately destroys, alters or creates a false document to subvert an adverse party's investigation of his right to seek a legal remedy, and injuries are pleaded and proven, a claim for the resulting increased costs of the investigation will lie. G.S. 1A-1, Rule 37(c). The cases cited by defendants in support of their argument that allowing this action for civil conspiracy is tantamount to allowing a civil action for perjury are distinguishable. G.S. 14-209.

Justice MARTIN dissenting in part.

Justice FRYE joins in this dissenting opinion.

ON appeal from a decision of the Court of Appeals, one judge dissenting, 61 N.C. App. 189, 300 S.E. 2d 707 (1983). The Court of Appeals affirmed in part and reversed in part orders and judgments entered December 14, 1981 in Superior Court, ANSON County. Heard in the Supreme Court September 15, 1983.

*James, McElroy & Diehl, P.A., by Gary S. Hemric, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding, for defendant appellant Niazi-Sai.*

*Kennedy, Covington, Lobdell & Hickman, by Charles V. Tompkins, Jr. and Fred B. Clayton, for defendant appellee Deen.*

*No counsel appeared for defendant appellee Hall.*

MITCHELL, Justice.

This case involves claims of an administrator of a decedent's estate against two physicians and a physician's assistant for wrongful death and civil conspiracy. The questions addressed in this appeal include (1) whether the plaintiff's motion to amend his complaint should have been allowed; (2) whether the complaint sufficiently stated a claim for punitive damages arising out of the alleged negligence of the defendants; and (3) whether the dismissal of claims against the defendants for civil conspiracy was proper. The Court of Appeals held that the trial court erred in denying the plaintiff's motion to amend his complaint to add allegations set forth in a proposed amended complaint attached to that motion. The Court of Appeals affirmed the trial court's dismissal of claims for punitive damages for wrongful death and affirmed the trial court's dismissal of claims for civil conspiracy against all defendants. We reverse the decision of the Court of Appeals on each issue and remand the case for further proceedings.

In his representative capacity as administrator of his brother Archie Lee Henry's estate, the plaintiff Joe Henry brought this action on June 25, 1981 against two doctors and a physician's assistant for wrongful death and civil conspiracy. The original complaint alleged that the decedent was 35 years old at the time of his death on July 8, 1979. In the latter part of June 1979 Henry began to feel pain and discomfort in his chest which radiated into his shoulders and down both arms. He experienced a burning sensation, nausea and "heartburn" after eating. He also had difficulty breathing and resting comfortably at night.

After experiencing more severe chest pain and other ailments on Saturday, June 30 and Sunday, July 1, Henry went to the hospital emergency room facility at Anson County Hospital. At the hospital an emergency room physician examined Henry and took a medical history from him. The physician prepared a report on the examination and history and placed it in Henry's medical file. While at the hospital Henry was x-rayed. A radiologist interpreted his chest x-ray, prepared a written report of his findings, and placed the report in Henry's record. The emergency room physician diagnosed Henry as having a pneumonia condition. The physician prescribed medicine for him and

instructed him to see the defendant Deen if he had any more problems. Deen is a licensed physician in the general practice of medicine in Anson County whose office was adjacent to the hospital. After discharging Henry that day, the emergency room physician and the radiologist reviewed the x-ray report. The report indicated possible serious cardiac deterioration. In the report the radiologist urged a complete medical evaluation of Henry's chest and his symptoms. Late Sunday evening the emergency room physician called Henry at his home and specifically instructed him to see the defendant Deen on Tuesday, July 3.

The plaintiff's complaint alleged that Henry visited Deen's office on the morning of July 3, 1979, and that at that time his symptoms had not changed. Henry told a medical technician about his symptoms, and they were recorded on a medical chart prepared in Deen's office. Henry also told the technician that his father had died of heart disease and that Henry had been treated in 1977 for high blood pressure. That information also was written on the medical record. The plaintiff alleged that this record and the substance of the records from the hospital were available to and known to Deen and Physician's Assistant Hall on July 3. Hall was employed by Deen at the time. The plaintiff claims that despite Henry's request for help and treatment, the defendants Deen and Hall conducted only a cursory examination of him, and without further tests urged him to continue taking the medicine prescribed for a pneumonia condition.

Deen and Hall advised Henry to return for a follow-up appointment on Friday, July 6, 1979. Henry returned on that day, his condition unchanged. He again related his symptoms to a medical technician, and they were written on his medical chart. Because Deen was not in his office on July 6, Henry was seen by Physician's Assistant Hall. The plaintiff alleged that Hall conducted no tests on Henry but instead advised him to continue taking the medication prescribed for him on July 1 by the emergency room physician. She also prescribed additional medication unrelated to a heart condition. In his original complaint the plaintiff alleged that Hall did not consult with any physician concerning Henry's condition on July 6.

The plaintiff alleged that Henry suffered from arteriosclerosis, coronary atheromatosis and coronary thrombosis, the

combination of which, if undiagnosed and untreated, leads inevitably to the death of heart tissue and possible cardiac arrest. He alleged that Henry's symptoms as disclosed to Hall and Deen made a medical diagnosis of heart disease compelling and obvious.

Henry died on July 8, 1979 of massive myocardial infarction as a result of heart disease. He did not die of pneumonia, nor did any pneumonia condition contribute to his death, according to the plaintiff's complaint.

The plaintiff claimed that after Henry's death the defendants Deen, Hall and Niazi, a licensed physician, initiated a conspiracy to alter medical records and to prevent the plaintiff from discovering the negligent acts of the defendants Deen and Hall. The defendants allegedly destroyed medical records concerning medical treatment of Henry and fabricated a record of a July 6, 1979 consultation between the defendants.

In summary the plaintiff's original complaint set forth the following counts: (1) Henry's death was proximately caused by Deen's negligence; (2) Henry's death was proximately caused by Hall's negligence; (3) Hall's negligence was imputed to Deen under a theory of *respondeat superior*; (4) the gross, wanton, intentional and reckless conduct of Hall and Deen entitled the plaintiff to recover punitive damages; (5) the conspiracy between Deen and Hall to falsify medical records constituted civil conspiracy giving rise to punitive damages; (6) the conspiracy between Hall, Deen and Niazi to create a record of non-existent consultation constituted civil conspiracy giving rise to punitive damages. The complaint sought actual damages for wrongful death from Deen and Hall and punitive damages for wrongful death and civil conspiracy from Deen and Hall. From Niazi the complaint sought only punitive damages for civil conspiracy.

After the defendants made motions to dismiss the original complaint, the plaintiff, on November 30, 1981, filed a motion to amend and attached a proposed amended complaint. The amended complaint repeated the original claim that Hall never consulted with a physician on July 6, 1979 but alleged in the alternative that a consultation did occur between Hall and Niazi on that day. The amended complaint alleged that Physician's Assistant Hall called Niazi on July 6, 1979 for a consultation as a result of an arrangement between Niazi and Deen by which Niazi treated

Deen's patients in Deen's absence. The plaintiff claimed that Niazi advised Hall to have Henry admitted to a hospital and to have an electrocardiogram test. The plaintiff also claimed that Niazi failed to examine Henry personally and failed to examine the chest x-rays even though he was aware that Hall was only a physician's assistant and not a licensed physician. Instead, Niazi attempted to diagnose Henry and advise treatment over the telephone. The amended complaint added a claim against Niazi for actual and punitive damages for wrongful death as well as adding a claim against Deen, Hall and Niazi for actual damages resulting from the civil conspiracies.

On December 14, 1981 the trial court dismissed the civil conspiracy claims, and the claims for punitive damages for wrongful death against Deen, Hall and Niazi. The trial court also denied the plaintiff's motion to amend his complaint and dismissed the claim for wrongful death against Niazi. The Court of Appeals upheld the trial court's dismissal of claims against Hall and Deen for punitive damages for wrongful death and claims against all the defendants under a theory of civil conspiracy, and reversed the trial court's denial of certain of the plaintiff's proposed amendments.

I.

[1] The defendant Niazi assigns as error the holding of the Court of Appeals that the trial court abused its discretion by denying the plaintiff's motion to amend his complaint. This assignment is meritorious as to those portions of the amended complaint which relate to the alleged wrongful death of Henry resulting from the negligence of Niazi. Since the original complaint did not give notice of a claim against Niazi for negligence or of the transactions or occurrences to be proved in support of any such claim, Rule 15(c) of the North Carolina Rules of Civil Procedure prevents the relation back of this amendment to the time the original complaint was filed. As the motion to amend and attached amended complaint were filed after the running of the applicable statute of limitations, the claim for relief for wrongful death against Niazi set forth in the amended complaint is barred. Therefore, the trial court did not abuse its discretion in denying an amendment adding that claim.

The plaintiff's original complaint sought recovery for wrongful death and civil conspiracy. The complaint set out in considerable detail allegations of negligence on the part of Deen and Hall and civil conspiracy on the part of Deen, Hall and Niazi. The only reference in the original complaint to any negligence by Niazi was as follows:

> 6. This is an action for money damages sought by Plaintiff on account of the wrongful death of Henry as the proximate result of *certain negligent and willful, wanton conduct on the part of Deen, Hall and Niazi, acting jointly and severally.* The amount in controversy, exclusive of interest and costs, exceeds $5,000.00.

(Emphasis added.) The complaint went on, however, to state that: "Specifically, Hall did not, at any time on July 6, 1979, or thereafter, consult with Niazi concerning Henry, nor did she at any time receive any medical advice or information from Niazi concerning Henry or the treatment of his illness."

The complaint then continued to state at length and with great specificity the manner in which the plaintiff contended that Deen, Hall and Niazi conspired to falsify medical records in order to indicate that Niazi had consulted with Hall concerning Henry's condition when, in fact, Niazi had not been involved in any way in the diagnosis or treatment of Henry. This allegation was frequently repeated throughout the complaint and is fairly represented by the following:

> 38. Plaintiff is informed, believes and therefore alleges that Deen and Hall further agreed and conspired with Niazi to create a false and misleading medical record to the effect that Hall had consulted with Niazi on July 6, 1979, concerning Henry's condition, *when in fact she had not done so.* In furtherance of that conspiracy and with the knowledge, consent and cooperation of Deen and Niazi, Hall prepared a fictitious medical record detailing the *non-existent consultation with Niazi* and Niazi agreed to furnish this fraudulent document to anyone who inquired into his participation of the treatment of Henry.

(Emphasis added.)

Further, in the portion of the complaint entitled "PRAYER FOR RELIEF" the plaintiff sought as his sole relief against Niazi:

> 3. That he have and recover of Defendant Niazi the sum of $5,000,000.00 as punitive damages on account of the unlawful civil conspiracy engaged in by Niazi, as more particularly alleged in the Sixth Count of this Complaint;

That part of the Complaint entitled "SIXTH COUNT" included paragraphs 53 and 54 which relate only to the alleged conspiracy between the defendants to make representations concerning the "non-existent consultation by Niazi on July 6, 1979."

The plaintiff filed his motion to amend his original complaint and the attached proposed amended complaint on November 30, 1981, more than two years after Henry's death on July 8, 1979. This motion was denied by the trial court on December 14, 1981. The plaintiff sought by his attempted amendment to allege alternatively that Hall did call Niazi on July 6, 1979 concerning Henry's condition, such call having been made pursuant to an arrangement between Deen and Niazi by which Niazi cared for Deen's patients in Deen's absence. The amended complaint alleged that Niazi attempted to diagnose Henry over the telephone without an examination of him even though he knew that Hall was not a physician.

A motion to amend is addressed to the discretion of the trial court. Its decision will not be disturbed on appeal absent a showing of abuse of discretion. *Smith v. McRary*, 306 N.C. 664, 295 S.E. 2d 444 (1982). Although the spirit of the North Carolina Rules of Civil Procedure is to permit parties to proceed on the merits without the strict and technical pleadings rules of the past, the rules still provide some protection for parties who may be prejudiced by liberal amendment. *See e.g. Kinnard v. Mecklenburg Fair*, 46 N.C. App. 725, 266 S.E. 2d 14, *aff'd per curiam*, 301 N.C. 522, 271 S.E. 2d 909 (1980).

The statute of limitations within which an action for negligent wrongful death must be brought is two years. G.S. 1-53. Since Henry died on July 8, 1979 the statute of limitations would bar any actions originated more than two years later. The plaintiff's original complaint was filed within the statute of limitations but the motion and amended complaint were not. Unless the

amendment related back to the time of filing of the original complaint, the plaintiff's action was not brought prior to the running of the statute of limitations.

The rule governing the relation back of amendments to original pleadings is Rule 15(c) which states the following:

> *Relation back of amendments.* — A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, *unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences to be proved pursuant to the amended pleading.*

G.S. 1A-1, Rule 15(c) (emphasis added). Therefore, whether an amendment relates back to the time of filing of an original pleading no longer depends, as was the case prior to the adoption of Rule 15, on an analysis of whether the amendment states a new cause of action. As we have previously stated:

> The amended pleading will therefore relate back if the new pleading merely amplifies the old cause of action, or now even if the new pleading constitutes a new cause of action, provided that the defending party had originally been placed on notice of the events involved.

*Burcl v. Hospital,* 306 N.C. 214, 224, 293 S.E. 2d 85, 91 (1982), *quoting with approval,* Wachtell, *New York Practice under the CPLR* 141 (1963).

As Justice Sharp (later Chief Justice) perceptively stated for this Court in a related context: "Since the sufficiency of a statement will vary with the circumstances of each case, generalizations by the court are of little more help to a pleader than the rules themselves. As usual, enlightenment comes from observing and understanding what the courts do." *Sutton v. Duke,* 277 N.C. 94, 103, 176 S.E. 2d 161, 166 (1970). For this reason, we do not undertake to render any generalizations concerning the meanings of the terms used in Rule 15(c) and, instead, allow them to speak for themselves. An amendment to an original pleading does not relate back to the time the original pleading was interposed if the original pleading "does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." G.S. 1A-1, Rule 15(c).

We turn now to the case before us. Not only did the plaintiff fail in his original complaint to give notice of the transactions or occurrences to be proved to support a claim for relief for wrongful death against Niazi, he specifically made allegations which would negate the possibility of any actionable negligence by Niazi. The original complaint specifically stated repeatedly and in great detail that Hall never consulted Niazi concerning the now deceased patient Henry and that Niazi never undertook to give advice concerning Henry. The plaintiff's prayer for relief specifically referred to portions of the complaint making identical allegations and sought recovery from Niazi only for his participation in an unlawful civil conspiracy. Therefore, the original complaint in the present case failed entirely to "give notice of the transactions, occurrences, or series of transactions, to be proved" pursuant to the plaintiff's proposed amendment. To allow an amendment to state such a new claim for relief for wrongful death after the defendant had been led by the original complaint into believing that he was to be called to answer only for a civil conspiracy and after the statute of limitations had run would tend to allow the defendant to be "ambushed." We have discouraged such results in other cases and do so here. *See e.g., Shugar v. Guill,* 304 N.C. 332, 338, 283 S.E. 2d 507, 510 (1981).

We hold that the trial court did not abuse its discretion in denying the plaintiff's motion to amend the original complaint to allege a claim for wrongful death against Niazi. The Court of Appeals erred in holding that the trial court abused its discretion in this regard and is reversed on this issue.

II.

[2]    The plaintiff-appellant next assigns as error the Court of Appeals' ruling that the trial court was correct in dismissing his claim for punitive damages for wrongful death against the defendants Deen and Hall. The Court of Appeals decided that the complaint sufficiently notified the defendants of a claim for medical malpractice but that it failed to allege aggravating circumstances which would give rise to punitive damages. We find merit in this assignment of error.

As we have stated in *Shugar v. Guill,* 304 N.C. 332, 283 S.E. 2d 507 (1981), with the adoption of G.S. 1A-1, the "new" rules of civil procedure, the legislature adopted a form of notice pleading.

As a result our prior cases requiring the setting forth of detailed and specific facts giving rise to punitive damages are no longer applicable. *Shugar v. Guill,* 304 N.C. 332, 283 S.E. 2d 507 (1981). Instead, a statement of a claim is adequate under Rule 8(a)(1) if it gives sufficient notice of events or transactions to allow the adverse party to understand the nature and basis for the claim, to allow him to prepare for trial, and to allow for the application of *res judicata. Sutton v. Duke,* 277 N.C. 94, 102, 176 S.E. 2d 161, 165 (1970). In *Shugar,* an assault case, the plaintiff alleged that the defendant without cause "did willfully and maliciously assault and batter the plaintiff," and asked for punitive damages in his prayer for damages. This Court found that pleading was sufficient to state a claim for punitive damages.

In the case at hand, the plaintiff set forth in detail allegations of negligence on the part of Hall and Deen in his original complaint. The plaintiff then pleaded the issue of punitive damages as follows:

### FOURTH COUNT

48. The negligent acts and omissions of Deen and Hall committed during the course of their professional treatment of Henry were gross and wanton, evidencing a reckless disregard for the rights and safety of their patient Henry.

49. The gross, wanton negligence of Deen and Hall was the direct, proximate cause of the wrongful death of Henry.

50. Because of the intentional or reckless, wanton conduct of Deen and Hall towards Henry, particularly within the context of the physician-patient relationship in which Henry relied upon the professional competence and integrity of those Defendants, Deen and Hall are liable to Plaintiff for substantial punitive damages.

In his prayer for damages, the plaintiff asked punitive damages of five million dollars. He amended as a matter of right asking instead for "a sum in excess of $10,000.00" for "the gross, wanton negligence incidental to the wrongful death of Henry and for the unlawful civil conspiracy."

We hold that under our ruling in *Shugar,* the complaint in the present case gave sufficient notice of a claim against Deen

and Hall for punitive damages for wrongful death to survive a motion for dismissal. We reverse the decision of the Court of Appeals to the contrary on this issue.

## III.

[3]   The plaintiff next assigns as error the determination by the Court of Appeals majority that the trial court correctly dismissed the plaintiff's claims under a theory of civil conspiracy. The plaintiff alleged that all three of the defendants conspired to impede his investigation of this case by destroying Henry's medical records and by falsifying and fabricating records to cover up the defendants' alleged negligence. The trial court granted the defendants' motions to dismiss the claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. G.S. 1A-1, Rule 12(b)(6).

The Court of Appeals majority affirmed giving as its reason that to allow such a claim would be to allow a civil action for perjury, or subornation of perjury. The Court of Appeals relied upon this Court's opinions in *Gillikin v. Springle,* 254 N.C. 240, 118 S.E. 2d 611 (1961) and *Gillikin v. Bell,* 254 N.C. 244, 118 S.E. 2d 609 (1961) for the rule that civil actions for perjury or subornation of perjury will not lie. We hold that the Court of Appeals majority erred in affirming the trial court on the basis of this reasoning. As discussed more fully later in this opinion, *if the trial court on remand allows the plaintiff's motion to amend to allege injury* from the conspiracy, the plaintiff's pleadings state a claim for civil conspiracy upon which relief can be granted. The Court of Appeals is reversed on this issue.

In deciding whether a complaint adequately states a claim upon which relief can be granted within the meaning of Rule 12(b)(6), the courts must take the facts as they appear in the plaintiff's pleadings as true and consider the legal sufficiency of the complaint. Resolution of evidentiary conflicts is not within the scope of the rule. *White v. White,* 296 N.C. 661, 252 S.E. 2d 698 (1979). Examined in such manner the complaint and proposed amendment in this case state a legally sufficient claim for civil conspiracy.

In civil actions for recovery for injury caused by acts committed pursuant to a conspiracy, this Court has stated that the com-

bination or conspiracy charged does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all. *Shope v. Boyer*, 268 N.C. 401, 150 S.E. 2d 771 (1966); *Muse v. Morrison*, 234 N.C. 195, 66 S.E. 2d 783 (1951). The gravamen of the action is the resultant injury, and not the conspiracy itself. *Shope v. Boyer*, 268 N.C. 401, 150 S.E. 2d 771 (1966). To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective. *Muse v. Morrison*, 234 N.C. 195, 66 S.E. 2d 783 (1951). In *Muse* this Court held that the complaint sufficiently stated a claim for civil conspiracy where it alleged a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.

In this action the original complaint alleged that the defendants Hall and Deen agreed to create and did create false and misleading entries in Henry's medical chart. The complaint further alleged that the defendants obliterated another entry in the chart concerning the true facts of the diagnosis and treatment of Henry. It was also alleged that Deen and Hall conspired with Niazi to destroy or conceal the actual medical record on Henry and to create a false medical record to the effect that Hall consulted with Niazi on July 6, 1979. The original complaint additionally alleged that Hall created the false document and that Niazi agreed to produce the document to anyone who inquired about Niazi's participation in Henry's treatment. Such acts by the defendants, if found to have occurred, would be acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice. *See generally, In Re Kivett*, 309 N.C. 635, 309 S.E. 2d 442 (1983). Therefore, the original complaint adequately alleged a conspiracy among the defendants and wrongful acts by the defendants in furtherance thereof. The amended complaint, *if allowed*, adds the required allegation of injury.

That this State has a policy against parties deliberately frustrating and causing undue expense to adverse parties gathering information about their claims is manifest in G.S. 1A-1, Rule 37 which sets out the consequences for parties who refuse to

allow discovery. Specifically, when a party refuses to make an admission of fact or fails to make an admission concerning the genuineness of a document as requested under Rule 36, and that fact or genuineness is later proved, a trial court may award to the party who requested the admission the costs of proving the fact. G.S. 1A-1, Rule 37(c). Where, as alleged here, a party deliberately destroys, alters or creates a false document to subvert an adverse party's investigation of his right to seek a legal remedy, and injuries are pleaded and proven, a claim for the resulting increased costs of the investigation will lie.

The defendants and the majority in the Court of Appeals reason that to allow an action for civil conspiracy in this case is tantamount to allowing a civil action for perjury, an action which this Court has refused to recognize in prior cases. *See e.g. Gillikin v. Springle*, 254 N.C. 240, 118 S.E. 2d 611 (1961); *Gillikin v. Bell*, 254 N.C. 244, 118 S.E. 2d 609 (1961); *Brewer v. Carolina Coach*, 253 N.C. 257, 116 S.E. 2d 725 (1960). We find those cases distinguishable from the case at hand.

Each of the cited cases involved an attempt by a party who had lost a case at trial to recover damages in a later proceeding from a party or witness who was alleged to have committed perjury or suborned perjury at the trial and caused the moving party to lose that earlier action. In the cited *Gillikin* cases the plaintiff sought damages from defendants who were alleged to have conspired to present and to have in fact presented false testimony and evidence at trial preventing the plaintiff from winning a wrongful death action. In *Gillikin v. Springle*, 254 N.C. 240, 118 S.E. 2d 611 (1961), the Court reasoned that criminal sanctions for perjury are available, and therefore no tort recovery for perjury is allowable. In *Godette v. Gaskill*, 151 N.C. 52, 65 S.E. 612 (1909), this Court denied the right to recover for damages resulting from perjury in an earlier trial. The Court based its holding on the lack of precedent for such an action, the policy favoring final judgments, and the danger of a multiplicity of suits by parties dissatisfied by the outcome of trials. The *Godette* opinion expressed concern that witnesses might be intimidated from testifying if they feared they would be subjected to subsequent lawsuits for false testimony. Other jurisdictions have also adopted rules which for similar reasons preclude civil actions for perjury. *See*

Annot., Actionability of Conspiracy to Give or To Procure False Testimony or Other Evidence, 31 A.L.R. 3d 1423 (1970).

At least one commentator has urged the recognition of a tort action for perjury. *See*, Note, Civil Remedies for Perjury: A Proposal for a Tort Action, 19 Ariz. L. Rev. 349 (1977). The author traces the common law roots of the rule against civil actions for perjury and proposes a tort with a stringent burden of proof for the plaintiff. The author notes that courts have long been creative in allowing damages for perjury under the guise of other names, such as abuse of process. He urges the legislative enactment of a statutory cause of action, and notes that Maine has had such a statute for a number of years. Me. Rev. Stat. tit. 14, § 870 (1964). He argues that sparse case law under the Maine statute should give comfort to those fearing a multiplicity of lawsuits arising from a civil action for perjury.

We need not consider here the continuing vitality of the rule forbidding civil actions for perjury because we find that this case does not come within the purview of the cases which preclude private claims for perjury. Perjury is defined by statute and case law as a false statement knowingly made in a proceeding in a court of competent jurisdiction or concerning a matter wherein an affiant is required by law to be sworn as to some matter material to the issue or point in question. G.S. 14-209; *State v. Arthur*, 244 N.C. 582, 94 S.E. 2d 646 (1956). The complaint in this case makes no allegation that the defendants have perjured themselves by making false sworn statements. The complaint alleging conspiracy was apparently filed before any discovery in which sworn statements were made. The complaint sets no precise time at which the alleged conspiracy and wrongful acts occurred other than alleging that they occurred after the investigation of Henry's death began.

The policy considerations often cited in support of the rule barring civil suits for perjury are inapplicable to this case. Unlike the defendants in the *Gillikin* cases and their predecessors, at the time this action was brought the defendants were not subject to criminal sanctions for perjury. From the pleadings it appears that at the time of the alleged conspiracy no court had jurisdiction and the defendants had not been required to give sworn statements. The policy favoring final judgments, a factor in the cases re-

jecting civil actions for perjury, is not pertinent to this case, since this case had not been fully adjudicated on the issues when the trial court dismissed the plaintiff's civil conspiracy claims. The plaintiff seeks to try his civil conspiracy claims and his other claims in one trial. If the plaintiff is allowed to pursue his claims for civil conspiracy in this case, the jury will be able to consider all issues in the same trial. There will be no opportunity to collaterally attack any judgment on the wrongful death claims since judgment will be entered in the same action on the conspiracy claims and will bar subsequent conspiracy claims. Because subsequent suits adjudicating the same issues will be barred, there is no danger of a multiplicity of lawsuits arising out of one lawsuit.

The prohibition against private perjury actions also is based in part on concerns that witnesses will be intimidated and will hesitate to testify because of fears of subsequent actions against them. Even so, we think it is reasonable to expect potential parties to lawsuits to refrain from falsification or concealment of evidence in seeking to avoid litigation or liability.

The original and amended complaints in combination set forth a claim in which the plaintiff alleged a conspiracy, wrongful acts and injuries resulting from those acts. The claim, therefore, is legally sufficient to withstand a motion for dismissal pursuant to Rule 12(b)(6), *if the amendment to allege injury is allowed* by the trial court acting in its discretion.

## IV.

Even though the original complaint contained a prayer for punitive damages for civil conspiracy, it failed to allege any particular injury resulting from the conspiracy and failed to pray actual damages. By filing his motion and proposed amended complaint, the plaintiff sought to add allegations of injury and a prayer for resulting actual damages.

The majority in the Court of Appeals found that, even when the original and amended complaints were considered together, the plaintiff had alleged no injury in this case, since the $3,000 in investigative expenses that the plaintiff claimed to have spent to uncover information about Henry's actual treatment was not unique. The Court of Appeals reasoned that the plaintiff cannot recover for injury arising from the civil conspiracy when his

failure to recover on the wrongful death claim has not yet re-
sulted in injury by a judgment unfavorable to him. We disagree
and hold that, if allowed, the amended complaint offered by the
plaintiff adequately alleges injury resulting from the alleged civil
conspiracy to support a claim for relief.

In the context of this case it is readily apparent that the trial
court did not deny the amendment alleging injury and resulting
actual damages as a result of the exercise of its discretion. In-
stead, like the Court of Appeals, the trial court felt that, as a mat-
ter of law, a claim for civil conspiracy would not lie in this case
even if the amendment was allowed. As a result, the trial court
proceeded on the premise that it was required to deny the amend-
ment and required to allow the defendants' motions to dismiss for
failure to state a claim. The trial court's actions in denying the
amendment to allege injury and actual damages and dismissing
the civil conspiracy claims must be reversed, and these issues
must be remanded to the trial court in order that it may rule
upon them in light of this opinion. *See Byrd v. Mortenson*, 308
N.C. 536, 302 S.E. 2d 809 (1983).

Since the original complaint gave the defendants full notice
of the nature of the civil conspiracy claim and the matters to be
proved pursuant to that claim, we believe that, upon remand to
the trial court, the trial court in its discretion properly may allow
the plaintiff's amendment to allege injury and actual damages
resulting from the alleged civil conspiracy. Upon remand of this
case to the trial court, that court in its discretion must determine
whether to allow the plaintiff to amend to allege such injury and
actual damages. If the trial court allows that amendment, it must
then deny the defendants' motions to dismiss for failure to state a
claim.

In remanding, we note that the North Carolina Rules of Civil
Procedure contemplate a liberality of pleadings. Rule 15(a)
specifically states that, after the period passes during which a
party may amend as a matter of course, the trial court shall free-
ly give leave to amend when "justice so requires." G.S. 1A-1, Rule
15(a).

The decision of the Court of Appeals is reversed, and the
case is remanded to the Court of Appeals for its remand to the

Superior Court, Anson County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MARTIN dissenting in part.

I dissent from the majority's holding in part I of its opinion. I find that plaintiff has complied with Rule 15(c) with respect to the amended complaint against defendant Niazi. Paragraph 6 of the original complaint places Niazi on notice of the transactions to be proved pursuant to the amended pleading. It alleges plaintiff is entitled to damages for the wrongful death of Henry caused by the negligence of defendants Deen, Hall, and *Niazi*, acting jointly and severally. The original pleading gives defendant Niazi notice of the events involved. *Burcl v. Hospital*, 306 N.C. 214, 293 S.E. 2d 85 (1982). The notice obtained from the original complaint is not vitiated by the failure to specify in the prayer for relief that plaintiff sought damages for wrongful death. The prayer for relief is not an essential part of the complaint and may be disregarded as immaterial. *Board of Education v. Board of Education*, 259 N.C. 280, 130 S.E. 2d 408 (1963). The nature of plaintiff's cause of action is to be determined from the pleadings, not the prayer for relief. *Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248 (1967).

The present rules of civil procedure adopt a form of notice pleading. *Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981). They should be liberally construed, with the goal of justice always kept in mind. While the original complaint may not be sufficient to sustain a verdict based on wrongful death, *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970), it is sufficient notice to allow the proposed amendment to relate back to the time the original complaint was filed. Even though a new cause of action is alleged in the amendment, relation back will not be defeated. *Burcl v. Hospital, supra*, 306 N.C. 214, 293 S.E. 2d 85; *Clary v. Nivens*, 12 N.C. App. 690, 184 S.E. 2d 374 (1971). My view of the law is buttressed by decisions from the state of New York based on section 203(e) of the New York Civil Practice Law and Rules, a counterpart to our Rule 15(c). *Tobias v. Kesseler*, 18 A.D. 2d 1094, 239 N.Y.S. 2d 554 (1963) (allowing malpractice amendment to relate back to original complaint alleging assault and trespass);

*Berlin v. Goldberg,* 48 Misc. 2d 1073, 266 N.Y.S. 2d 475 (1966) (allowing relation back of wrongful death amendment when plaintiff died after institution of action for personal injuries). Likewise, the federal decisions support this conclusion. *Bradbury v. Dennis,* 368 F. 2d 905 (10th Cir. 1966); *Newman v. Freeman,* 262 F. Supp. 106 (E.D. Pa. 1966) (adding parent's claim to minor's injury action).

The Court of Appeals correctly held that the trial court should have allowed the amendment. Except as above stated, I concur in the majority opinion.

Justice FRYE joins in this dissent.