NATIONSBANK OF NORTH CAROLINA, N.A. (FORMERLY NCNB), PLAINTIFF V. MAGGIE THOMPSON (JONES) BAINES, DEFENDANT

No. 939DC991

(Filed 6 September 1994)

**1. Pleadings § 364 (NCI4th)— motion to amend—new counterclaims—denied—no abuse of discretion**

The trial court did not abuse its discretion in an action for a deficiency on a note by denying defendant's motion to amend her

answer to assert new counterclaims where the court noted that granting the motion would materially prejudice plaintiff by requiring plaintiff to defend against claims for affirmative relief for the first time almost two years after plaintiff instituted the action.

**Am Jur 2d, Pleading § 310.**

**Timeliness of amendments to pleadings made by leave of court under Federal Rule of Civil Procedure 15(a). 4 ALR Fed. 123.**

2. **Trial § 598 (NCI4th)— action on a note—findings of fact— competent evidence to support**

There was no error in the trial court's findings of fact in an action in district court on a note where there was competent evidence before the court to support the trial court's findings.

**Am Jur 2d, Trial §§ 1978 et seq.**

3. **Waiver § 1 (NCI4th)— action on a note—acceptance of late payments—no waiver**

The trial court did not err in its conclusion that plaintiff had not waived its rights under a note by accepting late payments where the court found that plaintiff had notified defendant over one hundred times that prompt payment would be expected in the future and there was competent evidence in the record to support this finding.

**Am Jur 2d, Estoppel and Waiver §§ 154 et seq.**

4. **Estoppel § 15 (NCI4th)— action on a note—acceptance of late payments—acceleration of debt not estopped**

The trial court's conclusion in an action on a note that plaintiff was not estopped from invoking its acceleration rights under the agreement by previous acceptance of late payments was sufficiently supported by a finding of fact that plaintiff did not change her position in any way to her detriment in reliance on any action or inaction by plaintiff.

**Am Jur 2d, Estoppel and Waiver §§ 26 et seq.**

**Comment Note.—Quantum or degree of evidence necessary to prove an equitable estoppel. 4 ALR3d 361.**

NATIONSBANK OF NORTH CAROLINA v. BAINES '

[116 N.C. App. 263 (1994)]

Appeal by defendant from judgment and order signed 10 February 1993 and filed 13 February 1993 by Judge Charles W. Wilkinson, Jr. in Person County District Court. Heard in the Court of Appeals 23 May 1994.

NationsBank of North Carolina, N.A. ("plaintiff") sued Maggie Thompson Baines ("defendant") on 12 July 1990 to recover the amount owed under a purchase money security agreement defendant signed upon purchasing a new automobile. Defendant answered the complaint and filed counterclaims against plaintiff seeking to recover her equity in the contested automobile. Defendant also filed a Third Party Complaint, asserting cross-claims against her disability insurance company, Georgia International Life Insurance Company ("the insurance company"). On 4 November 1991, defendant took a voluntary dismissal of her Third Party Complaint against the insurance company. On 7 August 1992 defendant filed a motion for leave to amend her answer and assert additional counterclaims, in which she attempted to assert her alleged right to affirmative relief under various theories. Judge C.W. Allen, Jr. denied her motion to amend on 5 November 1992.

After a bench trial at the 11 January 1993 civil session of Person County District Court, Judge Charles W. Wilkinson entered judgment for plaintiff and dismissed defendant's counterclaims on 13 February 1993. Defendant appeals from the judgment entered by the trial court.

*Smith Helms Mullis & Moore, L.L.P., by Leslie C. O'Toole and Paul K. Sun, Jr., for plaintiff-appellee.*

*Mark Galloway for defendant-appellant.*

ORR, Judge.

Defendant entered a written purchase-money security agreement ("the agreement") with Uzzle Cadillac-Oldsmobile for the purchase of a new car on 10 June 1987. Defendant chose to purchase credit life insurance and accident and health insurance as part of the agreement. The agreement was assigned to plaintiff with defendant's consent. The terms of the agreement obligated defendant to pay sixty monthly payments of $339.31, with payments due on the tenth of each month, directly to plaintiff. The relevant portions of the agreement explained:

**Late Charge** . . . Acceptance by [plaintiff] of a late payment . . . does not excuse your late payment or mean that you can keep

NATIONSBANK OF NORTH CAROLINA v. BAINES

[116 N.C. App. 263 (1994)]

making payments after they are due. [Plaintiff] may take any of the steps set out in this contract if you make any payments late.

**Events of Default** You will be in default under the contract if any of the following things happen (1) if you fail to pay any payment according to the payment schedule or if you break any of the agreements in this contract; or . . . (7) if you take or fail to take any action concerning the vehicle or this contract which reasonably causes [plaintiff] to deem itself or the vehicle insecure or [plaintiff's] prospects for payment impaired.

**Entire Balance Due** If you default in any of the above ways, [plaintiff] has the right to declare all of the debt secured by this contract immediately due and payable. If you make any payment on this debt after [plaintiff] has demanded payment of the balance due, your payment will be applied to the unpaid balance. Your debt will be the unpaid balance less the unearned portion of the Finance Charge after giving you credit for the prepayment refund.

**Remedies on Default** If you default under this contract, [plaintiff] shall also have the right to the immediate possession of the vehicle without notice or resort to legal process, the right to take the vehicle from you by entering your property, or the property where the vehicle is stored, so long as it is done peacefully, and if there is any personal property in the vehicle, [plaintiff] can take this property without liability and store it for you.

**Other Provisions** . . . This contract contains the entire agreement between the [defendant and plaintiff], and any waiver or change in the terms of this contract must be in writing and signed by [plaintiff].

Defendant failed to make timely payments as required under the agreement in: 1) August and September of 1987; 2) March, June, August, September, November and December of 1988; 3) February, June, September and December of 1989; and 4) February and March of 1990. Plaintiff utilized an account database in which it recorded its successful and unsuccessful attempts to contact defendant to demand that she meet her obligations under the agreement. Between June 1987 and March 1990, plaintiff's representatives contacted or attempted to contact defendant on over one hundred occasions.

In March 1989 defendant applied for benefits under her accident and health insurance policy, asserting disability since January 1989.

NATIONSBANK OF NORTH CAROLINA v. BAINES

[116 N.C. App. 263 (1994)]

Defendant's insurance carrier paid the benefits, and continued to do so as defendant made additional claims on and off through January 1990. When the insurance carrier did make payments to plaintiff pursuant to claims filed by defendant, the payments were sometimes received after the due date under the agreement. On 16 January 1990, plaintiff received a payment from defendant's insurance carrier covering her period of disability through 20 December 1989. This was the last payment plaintiff received before accelerating the loan and repossessing the car in March 1990.

Plaintiff's representative reached defendant by telephone on 31 January 1990, and defendant indicated that she had not filed any more disability claim forms. Plaintiff's representatives attempted to contact defendant on 5 February 1990, but defendant's telephone was disconnected. Plaintiff sent defendant past due notices by mail on 5 February 1990 as well as on two other days in February. Plaintiff received neither payments from defendant in February and March 1990 nor any explanation from defendant that payments were forthcoming from either defendant or her disability insurance company.

The collections manager for plaintiff's Raleigh-area collections office reviewed defendant's account file and decided to repossess defendant's car. The decision to repossess was based upon the following factors: 1) defendant's overall poor payment record; 2) the burden shouldered by plaintiff in requiring its representatives to regularly and repeatedly contact defendant to demand payment under the terms of the agreement; 3) defendant's pattern of repeatedly breaking promises to make payments; 4) defendant's failure to ensure that her disability insurance company made her car payments during her periods of disability; 5) defendant's telephone was no longer in service and plaintiff was unable to contact her; 6) defendant's failure to respond to past due notices and failure to contact plaintiff to discuss payment of her obligation; and 7) no payments had been made for almost three months. On 12 March 1990, plaintiff mailed a letter to defendant offering to reinstate the agreement and to defer repossessing the vehicle if defendant paid all amounts past due under the agreement. Plaintiff received no consideration for its offer, and the offer was not requested by defendant. On 14 March 1990, before defendant received the letter, plaintiff repossessed the car. After defendant realized the car had been repossessed, she received plaintiff's 12 March 1990 letter.

After repossessing the car, plaintiff exercised its right to declare all of defendant's debt secured by the agreement immediately due and payable. Defendant neither paid nor offered to pay the entire unpaid debt. In April 1990 defendant's insurance company paid plaintiff for defendant's period of disability through 4 March 1990, which plaintiff applied to defendant's account. After notifying defendant of its intent to sell the repossessed automobile, plaintiff sold the automobile pursuant to the terms of the agreement. After crediting defendant's account with the amount of net proceeds from the sale of the automobile, plaintiff determined that defendant was still indebted to plaintiff in the amount of $7096.99, and plaintiff sued defendant to collect the deficiency amount along with interest and attorney fees, as allowed in the agreement. Defendant counterclaimed, claiming that plaintiff had waived its right to accelerate the loan by accepting late payments from defendant on numerous occasions, and seeking to recover defendant's equity in the repossessed car as well as attorney fees and lost disability payments.

## I. Defendant's Motion to Amend

[1]   Defendant contends that the trial court erred in denying her motion for leave to amend her answer and assert new counterclaims. We first note that "[a]lthough the spirit of the North Carolina Rules of Civil Procedure is to permit parties to proceed on the merits without the strict and technical pleadings rules of the past, the rules still provide some protection for parties who may be prejudiced by liberal amendments." *Henry v. Deen*, 310 N.C. 75, 82, 310 S.E.2d 326, 331 (1984) (citations omitted). Our standard of review here is clear: "[a] motion to amend is addressed to the discretion of the trial court. Its decision will not be disturbed on appeal absent a showing of abuse of discretion." *Id.* If the trial court articulates a clear reason for denying the motion to amend, then our review ends. Acceptable reasons for which a motion to amend may be denied are "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *Coffey v. Coffey*, 94 N.C. App. 717, 722, 381 S.E.2d 467, 471 (1989).

In the case before us, the trial court articulated its reasons for denying defendant's motion to amend her answer: undue delay and undue prejudice. The trial court noted that granting the motion would "materially prejudice [plaintiff]" by requiring plaintiff to defend against claims for affirmative relief for the first time, almost two years after plaintiff instituted the action. *See Carolina Garage, Inc. v.*

*Holston,* 40 N.C. App. 400, 404, 253 S.E.2d 7, 10 (1979). We therefore find no abuse of discretion.

## II. Findings of Fact

[2] Defendant assigns as error numerous findings of fact made by the trial court. Our careful review of the record reveals that there was competent evidence before the trial court to support the trial court's findings. Where a party contests findings of fact, this Court must "determine only if those findings to which exception was taken are supported by competent evidence of record." *Harris v. Walden,* 314 N.C. 284, 289, 333 S.E.2d 254, 257 (1985). Furthermore, "our appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, *even though the evidence might sustain findings to the contrary.*" *In re Montgomery,* 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) (emphasis added). As the finder of fact, the trial court "has the duty to pass upon the credibility of the witnesses who testify. He decides what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom. The appellate court cannot substitute itself for the trial court in this task." *General Specialties Co. v. Nello L. Teer Co.,* 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979). We find no error in the trial court's findings of fact.

## III. Conclusions of Law

Defendant asserts that the trial court erred in its conclusions of law that plaintiff was entitled to invoke its remedies under the agreement. Specifically, defendant contends that the trial court incorrectly concluded that there was no waiver or estoppel arising out of plaintiff's acceptance of numerous payments from defendant that were more than thirty days overdue. Defendant further contends that the trial court incorrectly concluded that usage of trade by consumer lenders could not modify the terms of the agreement and preclude plaintiff from exercising its rights under the agreement. We disagree.

### A. Waiver and Estoppel

[3] The trial court concluded that: "Defendant could not reasonably rely upon any failure by plaintiff to invoke its remedies at any earlier time, and did not reasonably rely on any failure by plaintiff to provide additional written notice to defendant of an intent to invoke the remedies under the agreement." Defendant objects to the trial court's determination that there was neither waiver nor estoppel in the case at hand.

**NATIONSBANK OF NORTH CAROLINA v. BAINES**

[116 N.C. App. 263 (1994)]

## 1. Waiver

The agreement specifically provided that "[a]ccceptance by [plaintiff] of a late payment . . . does not excuse your late payment or mean that you can keep making payments after they are due." Defendant argues that in spite of this language and evidence that plaintiff consistently reminded defendant that payment should be timely, plaintiff waived its rights under the agreement, citing this Court's language in *Driftwood Manor Investors v. City Federal Savings & Loan*, 63 N.C. App. 459, 464, 305 S.E.2d 204, 207 (1983). We explained in *Driftwood* that a noteholder who repeatedly accepts late installments will be held to have waived the right to accelerate the debt on that ground *unless the payor is first notified that prompt payment will be required in the future. Id.* Therefore, repeated acceptance of late payments does not constitute waiver where the creditor makes clear to the debtor its intent to continue to hold the debtor to the terms of the agreement. The policy arguments for this limitation on waiver are manifest—to make acceptance of late payments automatic waiver would discourage creditors from allowing debtors an opportunity to bring themselves current, in the hope that the contract can be salvaged and the debt retired to everyone's satisfaction.

The trial court in this case found that plaintiff had notified defendant over one hundred times that prompt payment would be expected in the future. This is not a case where the creditor consistently accepted late payments without notifying the debtor that the acceptance did not indicate that future payments were still expected to be paid in a timely fashion. The trial court's findings of fact noted that "throughout the period of defendant's loan, plaintiff's collections personnel frequently contacted and attempted to contact defendant, by telephone, by correspondence, and by in[-]person 'field calls,'" and that "[p]laintiff's collections personnel repeatedly demanded that defendant meet her obligations under the agreement and consistently referred defendant to the agreement for the parties' rights and remedies." Having determined that there was competent evidence in the record to support these findings of fact, we hold that the trial court did not err in its conclusion that plaintiff had not waived its rights under the agreement.

## 2. Estoppel

[4] Defendant next contends the trial court erred in not concluding from its findings of fact that plaintiff was equitably estopped from accelerating the debt because of its previous acceptance of late pay-

McLEAN v. MECHANIC

[116 N.C. App. 271 (1994)]

ments. In order to prove estoppel, however, defendant must show that she reasonably relied upon plaintiff's acceptance of late payments to her detriment. *See Hill v. Town of Hillsborough*, 48 N.C. App. 553, 558, 269 S.E.2d 303, 306 (1980). The trial court specifically found that defendant did not "change her position in any way to her detriment in reliance on any action or inaction by plaintiff." We hold that this finding of fact sufficiently supports the trial court's conclusion of law that plaintiff was not estopped from invoking its rights under the agreement.

## B. Usages of Trade

Finally, defendant asserts that the trial court erroneously concluded that "[u]nder the facts in this case, usages of trade by consumer lenders could not change, modify, supplement[,] or qualify the terms of the agreement." However, defendant did not address this contention in her brief. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned. N.C.R. App. P. 28(b)(5).

## IV. Conclusion

We note that there are assignments of error and cross-assignments of error asserted by both parties that are deemed abandoned pursuant to Rule 28(b)(5).

Accordingly, the decision of the trial court is affirmed.

Affirmed.

Judges JOHNSON and WYNN concur.