JOHN THOMAS MEEHAN, PLAINTIFF v. DOROTHY ANN CABLE AND
K. REID BERGLUND, TRUSTEE, DEFENDANTS

No. COA99-121

(Filed 7 December 1999)

**1. Mortgages— waiver of right to accelerate—acceptance of late payments—failure to assert intent to require prompt payment**

The trial court did not err in a foreclosure proceeding by concluding defendants were not entitled to a directed verdict on the issue of waiver because plaintiff presented substantial evidence that defendants repeatedly accepted late payments for the pertinent real property without asserting their intent to hold plaintiff to the terms of the note or to require prompt payment according to the terms of the note for future payments.

**2. Appeal and Error— preservation of issues—motion for new trial—specific basis required**

Since defendants' motion for a new trial under Rule 59(a) in a foreclosure proceeding case did not state any specific basis for granting a new trial as required by N.C.G.S. § 1A-1, Rule 7(b)(1), the issue was not properly before the Court of Appeals.

Appeal by defendants from judgment filed 19 June 1998 by Judge James U. Downs in Macon County Superior Court. Heard in the Court of Appeals 26 October 1999.

*Jones, Key, Melvin & Patton, P.A., by Richard Melvin, for plaintiff-appellee.*

*Creighton W. Sossomon for defendant-appellants.*

GREENE, Judge.

Dorothy Ann Cable (Cable) and K. Reid Berglund, Trustee (collectively, Defendants) appeal a jury verdict and judgment in favor of John Thomas Meehan (Plaintiff) and the trial court's denial of Defendants' motion for a new trial and motion for judgment notwithstanding the verdict.

In August 1985, Plaintiff entered into an agreement to purchase from Cable real property located on Cullasaja Drive, Highlands, North Carolina (the property). Plaintiff signed a promissory note (the note),

secured by a deed of trust for the property, in the amount of $71,500.00 plus interest at the rate of 10% per annum. The note specified payments would be made in annual installments of $9,654.66, and payments would be applied first to any accrued interest and then to any outstanding principal balance.

The note contained an acceleration clause, which stated:

> In the event of default in payment of any installment of principal or interest hereof or default under the terms of any instrument securing this note, and if the default is not made good within fifteen (15) days, the holder may, without notice, declare the remainder of the debt at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time.

In 1993, Defendants brought a foreclosure action against Plaintiff, which was heard before the Clerk of the Superior Court of Macon County. The Clerk entered an order permitting foreclosure, which was affirmed by the Superior Court in a trial de novo as provided by N.C. Gen. Stat. § 45-21.16(d1), and by this Court in *In re Foreclosure of Meehan*, 118 N.C. App. 337, 455 S.E.2d 498 (1995) (unpublished).

Plaintiff filed a separate action against Defendants pursuant to N.C. Gen. Stat. § 45-21.34 seeking, in pertinent part, an accounting of the amount due under the note and an injunction restraining Defendants from proceeding with foreclosure until final judgment in this action. Plaintiff alleged Defendants could not accelerate the debt owed by Plaintiff under the equitable defenses of waiver, estoppel, novation, and tender of payment.

On 26 August 1996, Plaintiff submitted $88,700.00 to the Clerk of Court, and on 24 September 1996, the trial court ordered a stay of the foreclosure sale. The trial court further ordered the Clerk of Court to hold a hearing to determine "the rights of the parties, including the amount due, if any." On appeal, however, this Court, in *Meehan v. Cable*, 127 N.C. App. 336, 489 S.E.2d 440 (1997), reversed in part the order of the trial court and remanded this case to the trial court for determination of Plaintiff's equitable defenses to the foreclosure action under N.C. Gen. Stat. § 45-21.34.

At trial, Plaintiff testified that although payments were due under the note in August of each year, he made the first payment in July of 1986 because Cable asked him to make the payment early. He also tes-

tified that over the years Cable had periodically asked him to make payments and he had complied, but he did not know whether these payments were made prior to their due date.

Plaintiff's records indicate he made payments as follows: $14,350.00 by 30 August 1985; $3,000.00 by 30 August 1986, with payments totaling $8,362.77 in 1986; $500.00 by 30 August 1987, with payments totaling $11,141.61 in 1987; $500.00 by 30 August 1988, with payments totaling $7,000.00 in 1988; $4,000.00 by 20 August 1989, with payments totaling $12,507.32 in 1989; $1,154.66 by 30 August 1990, with payments totaling $5,554.66 in 1990; $4,900.00 by 30 August 1991, with payments totaling $6,100.00 in 1991; $1,800.00 by 30 August 1992, with payment totaling $4,550.00 in 1992; and $2,800.00 in 1993. Plaintiff made approximately seventy-two payments to Cable.

Plaintiff stated that in addition to cash payments, he made payments on the note in forms other than cash, including providing Cable with horse feed. He did not, however, keep records of those payments, and could not testify regarding their amount.

In 1993 Plaintiff discussed the amount due under the note with Kent Satterfield (Satterfield), a certified public accountant who handled Cable's business affairs. At some point, Plaintiff asked Satterfield for an accounting of the payments made and amount due under the note. Plaintiff stated Satterfield told him the amount Cable claimed was due, but that he did not believe the amount was correct because the amount of interest was improperly calculated. He also stated he did not know whether he was in default on the note at that time because Cable would not provide him with an accounting.

Ladonna Keener (Keener), a certified public accountant, testified Plaintiff asked her to calculate the amount due under the note, including interest calculated on an annual basis. Plaintiff provided Keener with "lists of instructions on beginning balance, payment amounts, [and] dates of payments." Keener determined based on this information that the balance due as of 30 August 1996 was $86,147.98, and the amount due as of 28 May 1998 was $101,817.34. Keener did not run an amortization on the note to determine what method of interest was used to calculate the amount of the note.

Karen Meehan, Plaintiff's wife, testified she kept records of payments due under the note and, as of 19 December 1989, Plaintiff had made all payments due at that time. She stated that as of August of 1989, the balance due under the note was $59,875.87.

At the close of Plaintiff's evidence, Defendants made a motion for directed verdict on the issues of novation, estoppel, waiver, tender of payment, and an account stated. The trial court granted this motion with regard to account stated, but denied the motion with regard to novation, estoppel, and waiver. The record does not indicate the trial court's ruling on Defendants' motion for directed verdict on the issue of tender of payment.

Satterfield then testified for Defendants, based on the payment schedule of the note, that the interest due under the note was to be compounded on a monthly rather than annual basis. He stated the balance due under the note as of 27 April 1998 was $104,960.46, and Plaintiff had not been current with payments since 27 August 1991.

Cable testified she asked Plaintiff for the first payment due under the note in July of 1986, but subsequently did not ask for any payments until they were due under the note. She stated she kept a record of when checks were received, but "there were one or two checks that [she] did not put down." Cable never told Plaintiff it was acceptable to make partial payments, and Plaintiff never asked her for an accounting of how much money he owed her under the note. She also testified Plaintiff occasionally supplied her with feed for her horses, but the "slips" that accompanied the deliveries did not contain a value for the feed and generally did not contain a date.

At the close of evidence, Defendants renewed their motion for directed verdict made at the close of Plaintiff's evidence, and the trial court denied the motion.

The trial court submitted to the jury the issue of what amount Plaintiff owed Cable under the note, and whether the equitable defenses of estoppel, waiver, or novation precluded Defendants from commencing foreclosure proceedings against Plaintiff.

The jury found Plaintiff was indebted to Defendants under the note for $88,900.00, and found the equitable defenses of estoppel, waiver, and novation precluded Defendants from commencing foreclosure proceedings against Plaintiff.

After the trial court entered judgment on the jury verdict, Defendants moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. Defendants' motion for a new trial stated Defendants were entitled to a new trial under Rule 59(a)(5) (manifest

## MEEHAN v. CABLE

[135 N.C. App. 715 (1999)]

disregard of jury instructions), Rule 59(a)(7) (insufficiency of evidence or verdict contrary to law), and Rule 59(a)(8) (error in law by trial court). The motion, however, did not state how any of these rules applied to the facts of this case.

The trial court denied Defendants' motion for new trial. The record does not contain the trial court's ruling on Defendants' motion for judgment notwithstanding the verdict.

---

The issues are whether: (I) the record contains substantial evidence of the equitable defense of waiver, and (II) Defendants' motion for new trial contained grounds for relief.

I

[1] Defendants argue they were entitled to a directed verdict on the issues of waiver, novation, and estoppel because Plaintiff presented no evidence of these equitable defenses.[1]

A defendant is entitled to a directed verdict when, viewing the evidence in the light most favorable to the plaintiff, there is no substantial evidence to support the plaintiff's claim. *Cobb v. Reitter*, 105 N.C. App. 218, 220-21, 412 S.E.2d 110, 111 (1992). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 220, 412 S.E.2d at 111 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted)).

Defendants first contend the record contains no evidence of waiver. "A noteholder who repeatedly accepts late installments will be held to have waived the right to accelerate the debt on that ground unless the payor is first notified that prompt payment will be required in the future." *Barker v. Agee*, 93 N.C. App. 537, 541, 378 S.E.2d 566, 569 (1989) (citing *Driftwood Manor Investors v. City Federal Savings & Loan*, 63 N.C. App. 459, 305 S.E.2d 204 (1983)), *reversed in part on other grounds*, 326 N.C. 470, 389 S.E.2d 803 (1990). A noteholder, however, does not waive its right to accelerate the debt by "isolated instances of acceptance of late payments." *Id.* (noteholder

---

1. Defendants also argue in their brief to this Court that they were entitled to a directed verdict on the issue of tender of payment; however, although the record contained Defendants' request for a directed verdict on the issue of tender of payment, the record does not indicate how the trial court ruled on that motion. Moreover, the issue of tender of payment was not submitted to the jury. This issue is therefore not properly before this court, N.C.R. App. P. 10(b)(1), and we consequently do not address it.

did not waive right to accelerate debt by acceptance of two late payments). Moreover, a noteholder does not waive its right to accelerate the debt by accepting late payments so long as the noteholder "makes clear to the debtor its intent to continue to hold the debtor to the terms of the agreement." *Nationsbank of North Carolina v. Baines*, 116 N.C. App. 263, 270, 447 S.E.2d 812, 816 (1994).

In this case, the record indicates Plaintiff's annual payment of $9,654.66 was due in August of each year. Plaintiff's schedule of payments, however, shows that, other than in the first year, Plaintiff did not make his payments according to the payment schedule provided for in the note. Rather, viewing the evidence in the light most favorable to Plaintiff, the record establishes a pattern of approximately seventy-two payments made at various times for various amounts. Plaintiff, for example, paid only $3,000.00 of his 1986 payment prior to the due date, $500.00 of his 1987 payment prior to the due date, $500.00 of his 1988 payment prior to the due date, and $4,000.00 of his 1989 payment prior to the due date.

The evidence further shows that, upon acceptance of these payments, Defendants did not assert their intent to continue to hold Plaintiff to the terms of the note or require prompt payment according to the terms of the note for future payments.

Defendants argue a noteholder does not waive its right to accelerate a debt by accepting *partial* late payments under the note. The rules of *Driftwood* and *Barker*, however, do not distinguish between a noteholder accepting late payments for the full amount due and a noteholder accepting late payments for the partial amount due. Rather, waiver is based on the "consistent course of conduct" of the noteholder in accepting late payments. *Barker*, 93 N.C. App. at 541, 378 S.E.2d at 569.

Because Plaintiff presented substantial evidence Defendants repeatedly accepted late payments, the jury could find Defendants waived their right to accelerate Plaintiff's debt with regard to payments due in the past, and waived their right to accelerate the debt based on future delinquent payments without first notifying Plaintiff that prompt payment would be expected in the future. Defendants, therefore, were not entitled to a directed verdict on the issue of waiver.[2]

---

2. Defendants also assign error to the trial court's denial of their motion for judgment notwithstanding the verdict. The record does not contain the trial court's ruling on Defendants' motion for judgment notwithstanding the verdict; therefore, that issue

MEEHAN v. CABLE

[135 N.C. App. 715 (1999)]

Because we hold the trial court properly submitted to the jury the issue of waiver, and the jury found Defendants waived their right to commence foreclosure proceedings, we do not address Defendants' additional assignments of error pertaining to Plaintiff's equitable claims of estoppel and novation.

II

[2] Defendants contend the trial court erred by denying their motion for new trial under Rule 59(a) because the jury's finding that Plaintiff owed $88,900.00 under the note was not supported by the evidence.

In this case, Defendants' motion for new trial stated Defendants were entitled to a new trial under Rule 59(a)(5), Rule 59(a)(7), and Rule 59(a)(8). The motion did not, however, state any specific basis for granting a new trial. *See* N.C. Gen. Stat. § 1A-1, Rule 7(b)(1) (1990) (motion must contain grounds for relief); *Smith v. Johnson*, 125 N.C. App. 603, 606, 481 S.E.2d 415, 417 ("mere recitation of the rule number relied upon by the movant is not a statement of the grounds within the meaning of Rule 7(b)(1)"), *disc. review denied*, 346 N.C. 283, 487 S.E.2d 554 (1997). Because Defendants' motion does not meet the requirements of Rule 7(b)(1), this issue is not properly before this Court, N.C.R. App. P. 10(b)(1) (party assigning error to motion must have presented motion to trial court), and we therefore do not address it.

No error.

Judges WALKER and TIMMONS-GOODSON concur.

---

is not properly before this Court. N.C.R. App. P. 10(b)(1) (party assigning error to motion must obtain ruling on motion). Nevertheless, because we hold Defendants were not entitled to a directed verdict, Defendants would not be entitled to a judgment notwithstanding the verdict. *Dickinson v. Pake*, 284 N.C. 576, 584-85, 201 S.E.2d 897, 903 (1974) (motion for judgment notwithstanding the verdict is renewal of motion for directed verdict).